UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-20281

BRIAN FORSYTHE,

    Plaintiff,

v.

NCL (Bahamas) Ltd.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff sues Defendant and alleges:

**PRELIMINARY ALLEGATIONS**

1. Plaintiff, Brian Forsythe, is a citizen of Connecticut.

2. Defendant, NCL (Bahamas) Ltd., (hereafter "NCL" or "Defendant") is a foreign entity incorporated under the laws of Bermuda with its principal place of business in Miami, Florida, and is a citizen of Florida and Bermuda.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

4. The court has Diversity Jurisdiction of this matter.

5. At all times material hereto, Defendant, personally or through an agent:

    a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

  d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

  e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state;

  f. Defendant, as a common carrier, was engaged in the business of providing to the public and to Plaintiff in particular, for compensation, vacation cruises aboard its vessels.

6. At all times material hereto, Defendant is subject to the jurisdiction of the Courts of this state.

7. At all times material hereto, the causes of action asserted in this Complaint arise under the general maritime law of the United States.

8. This matter is being filed in the United States District Court for the Southern District of Florida in Miami-Dade County, Florida, as required by the forum selection clause contained within the cruise ticket contract issued by Defendant.

## FACTS COMMON TO ALL COUNTS

9. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, Norwegian Prima ("the vessel").

10. At all times material hereto, Defendant had exclusive custody and control of the vessel.

11. On or about January 24, 2023, Plaintiff was a paying passenger on the vessel, which was in navigable waters.

12. Defendant owned, managed, supervised, operated, maintained and/or controlled the bars, lounges and other areas of the Prima that sell and serve alcohol to passengers and owed its

passengers, including Plaintiff, the legal duty to perform such functions in such a manner as to prevent them from being injured by other passengers due to the influence of alcoholic beverages.

13.     Defendant had notice and knowledge of the serious zone of risk, danger, injury and violence that overservice of alcohol creates on its vessels and such knowledge is pervasive and indisputable within the cruise industry. There have been dozens of injuries stemming from overservice of alcohol on the subject vessel prior to the subject incident.

14.     There have been multiple substantially similar prior incidents of violence and injury stemming from alcohol overservice on its vessels which put Defendant on notice of the foreseeable risk. There have been dozens of fights and attacks stemming from overservice of alcohol on the subject vessel prior to the substantially similar attack upon Plaintiff.

15.     Prior to Plaintiff's incident a passenger named Lisa Long and her husband were violently attacked by an intoxicated passenger while onboard the Norwegian Sky. They filed a lawsuit against NCL for their injuries as set forth in Southern District of Florida Case No. 1:19-cv-24314-PCH.

16.     Prior to Plaintiff's incident a passenger named Ryan Bockiaro was violently attacked by an intoxicated passenger while onboard the Norwegian Escape. He filed a lawsuit against NCL for his injuries as set forth in Southern District of Florida Case No. 1:19-cv-20712-UU.

17.     Defendant also owed the duty to its passengers, including Plaintiff, to exercise reasonable care to keep and maintain its vessel in a condition reasonably safe for the use of passengers, including but not limited to the duty to adopt, implement, enforce, and carry out adequate and appropriate security measures and services and to take such precautions as were

reasonably necessary to protect passengers, including Plaintiff, from physical attacks by other passengers, which were reasonably foreseeable.

18. On or about January 24, 2023, Plaintiff, an African American male, was viciously attacked by a severely intoxicated white male while on the vessel.

19. The attacker, an individual named Blaine Elhart Krimmel, had been overserved alcohol by crewmembers on the vessel.

20. Upon information and belief, the attacker had been reported to security for his belligerence and intoxication prior to the incident occurring.

21. Defendant's security guards were present at the scene in the run-up to the incident as the attacker grew more and more violent, belligerent and disruptive. Defendant therefore had actual notice of the incident and an opportunity to prevent it completely.

22. Security guards attempted to intervene but were unsuccessful at preventing the attack. The efforts of the security guards were lackadaisical and misdirected. With minimal competence and caring they could have completely prevented the violent attack. Upon information and belief, Defendant's security personnel were never trained in how to adequately identify, diffuse, prevent, or stop an attack or act of violence, or were otherwise trained inadequately.

23. Specifically, the attacker was able to escape from security multiple times to attack Plaintiff.

24. During the incident the attacker was screaming threats at Plaintiff and disparaging him with swear words and racial slurs, such as: "I'll f*** you up stupid b**** n*****."

25. Despite the vicious attack and racist words of intimidation against him, Plaintiff continually tried to de-escalate the situation.

26. After the attack, Defendant treated Plaintiff like a criminal. He was improperly detained for hours and treated as though he was the attacker, despite having acted only in a manner consistent with de-escalation and self-defense as a last resort.

27. During Plaintiff's detention, despite his visible injuries and requests for medical attention, he was not released for prompt treatment.

28. The attacker was briefly detained and quickly released to the "first class" section of the vessel.

29. Plaintiff requested that Defendant assist him with reporting the incident to legal authorities and bringing charges against the attacker, stating that the attacker should be arrested. Defendant refused to help.

30. Instead of assisting Plaintiff in the aftermath of an incident of violence and racism, a crewmember, believed to be Defendant's head of security onboard, made false accusations against Plaintiff to intimidate him and his family. Plaintiff was falsely threatened that he had "two charges against him," including for sexual assault and for assaulting the attacker during the incident, both of which are false and without basis.

31. Defendant's head of security made intimidating statements to Plaintiff with a derogatory tone and inflection, calling him a criminal, and saying things such as "I'm gonna lock your a** up boy" and "don't move your a** from the seat boy."

32. Defendant's security personnel threatened that they were going to "throw them [Plaintiff and his family] off the boat."

33. Defendant's security personnel repeatedly indicated that if Plaintiff or his family made a complaint about the incident or reported it, they would retaliate against them.

34. When he was finally offered medical treatment after being refused for excessive time, Plaintiff was informed that he would have to pay for it, and was not given a price, but was advised that it would be substantial.

35. Plaintiff responded to Defendant that he could not afford the medical expenses they were insisting upon.

36. Following the incident Plaintiff and his family were followed by security and subjected to unnecessary, excessive and intrusive monitoring.

37. The way that Brian Forsythe was treated by crew and security after being the victim of violence and racism onboard attracted the attention of other cruise passengers, primarily African Americans and other non-white passengers, who organized a peaceful protest on Plaintiff's behalf.

38. The protest efforts were met with aggressive and intimidating behavior from Defendant's crewmembers and security, who repeatedly informed the protesters that they could not film onboard while other passengers were not hassled or prevented from filming.

39. Defendant's crewmembers consistently treated Plaintiff as the aggressor, and a criminal, threatening him, his family, and those attempting to help him with detention and/or arrest.

40. As a direct and proximate result Plaintiff was injured physically and suffered severe emotional and psychological distress.

**Count I – Strict Liability for False Imprisonment**

41. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

42. While Plaintiff was being wrongfully detained for hours after he was attacked, he was restrained to the point of not being free to leave the "brig."

43. Defendant's employees' restraint of Plaintiff was knowing, willful, wanton, and outrageous under the circumstances, and Plaintiff was aware of the restraint.

44. There was no legitimate reason for Plaintiff to be restrained by Defendant's employees in the "brig"; he was restrained because he was being wrongfully accused of being the attacker during the subject incident and of other false allegations.

45. Defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Plaintiff would result, and despite that knowledge, intentionally pursued the course of conduct, resulting in injury and damage.

46. The crewmembers and/or security guards who were detaining Plaintiff were employed by Defendant during the illegal restraint.

47. Defendant is strictly liable for intentional torts, including false imprisonment, committed by its employees against cruise passengers.

48. Because the subject crewmembers were employed by Defendant at the time they illegally and intentionally restrained Plaintiff, a passenger on the cruise, for no legitimate purpose, Defendant is strictly liable for false imprisonment.

49. Wherefore, Plaintiff requests compensatory damages for the physical and emotional injuries he has suffered, punitive damages because Defendant is liable for its employees' willful, wonton, and outrageous conduct, along with pre and post-judgment interests, costs, and any other relief the Court deems just and proper.

**Count II – Strict Liability for Intentional Infliction of Emotional Distress**

50. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

51. Defendant's employees illegally detained Plaintiff for hours and provided no meaningful medical treatment during that time.

52. Defendant withheld necessary medical care and treatment from Plaintiff.

53. They then proceeded to paint him as the aggressor during the subject attack and made threats that he could be arrested, falsely accusing him of crimes as serious as sexual assault.

54. While doing so, they attempted to force Plaintiff to sign documents under duress stating that he would indemnify Defendant regarding the attack and pay for all medical services rendered even though he was the victim.

55. Defendant's security threatened that they would "throw" Plaintiff and his family off the boat.

56. Defendant's security called Plaintiff "boy" in a demeaning and derogatory tone and swore at him.

57. Defendant's crewmembers knew that inflicting such conduct against Plaintiff would cause Plaintiff severe emotional distress, yet they did it anyway.

58. Defendant's crewmembers conduct was willful, wanton, outrageous, and utterly intolerable in a civilized society.

59. Plaintiff suffered severe emotional distress because of these incidents.

60. Defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Plaintiff would result, and despite that knowledge, intentionally pursued the course of conduct, resulting in injury and damage.

61. The subject crewmembers were employed by Defendant during this time period when they were intentionally inflicting emotional distress upon Plaintiff.

62. Defendant is strictly liable for the intentional torts of its employees, including intentional infliction of emotional distress.

63. Wherefore, Plaintiff requests compensatory damages for the physical and emotional injuries he has suffered, punitive damages because Defendant is liable for its employees'

willful, wonton, and outrageous conduct that is utterly intolerable in a civilized society, along with pre and post-judgment interests, costs, and any other relief the Court deems just and proper.

### Count III – Vicarious Liability for Failure to Prevent Assault

64. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

65. When Plaintiff was attacked, security guards employed by Defendant attempted to intervene but failed miserably.[1]

66. Despite there being a single attacker and multiple security guards, the attacker was able to escape security multiple times to attack Plaintiff.

67. These crewmember security guards had a duty to keep Plaintiff safe by, among other things, keeping the attacker from attacking him; i.e., employing enough competent security guards in the area to restrain a single, extremely intoxicated individual.

68. These crewmember security guards breached that duty when they failed to restrain the attacker in any meaningful way.

69. But for the failure of these crewmember security guards employed by Defendant to keep Plaintiff safe, he would not have been viciously attacked multiple times by the attacker.

70. As a result of this failure, Plaintiff suffered severe physical and emotional damages stemming from the attack.

71. Defendants are vicariously liable for the failures of these crewmember security guards to restrain the attacker regardless of whether the ultimate outcome was foreseeable.

72. Wherefore, Plaintiff requests compensatory damages for the physical and emotional injuries he has suffered because Defendant is vicariously liable for the crewmembers'

---

[1] The names of the security guards at the scene are not currently known to Plaintiff. However, they are identified in photos in the attached Composite Exhibit A. Plaintiff requested the names of the security guards from Defendant prior to filing this lawsuit but the request went unanswered.

failures, along with pre and post-judgment interests, costs, and any other relief the Court deems just and proper.

### Count IV – Vicarious Liability for Overserving the Attacker Alcohol

73. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

74. The attacker was extremely intoxicated at the time of the attack and had been excessively served alcoholic beverages.

75. Defendant's employees, including the bartenders and waiters who served the attacker on the day of the incident, had a duty to exercise reasonable care and to not overserve alcohol to passengers to a dangerous extent.

76. The bartenders and waiters who served the attacker after he was too intoxicated breached that duty, which led to the vicious attack.

77. Upon information and belief, there were two bartenders and two waiters who overserved alcohol to the attacker.[2]

78. Such overservice of alcohol was willful, wanton, and outrageous under the circumstances.

79. But for the willful failure of these crewmembers employed by Defendant to refuse to overserve the attacker alcohol, Plaintiff would not have been viciously attacked multiple times by the attacker.

80. As a result of this failure, Plaintiff suffered severe physical and emotional damages stemming from the attack.

---

[2] The names of the bartenders and waiters are not currently known to Plaintiff.  However, Defendant can easily ascertain their identity through CCTV footage as well as review of the attacker's guest folio and receipts.  Plaintiff requested this information and evidence from Defendant prior to filing this lawsuit but the request went unanswered.

81. Defendants are vicariously liable for the failures of these crewmembers who overserved the attacker alcohol regardless of whether the ultimate outcome of doing so was foreseeable.

82. Wherefore, Plaintiff requests compensatory damages for the physical and emotional injuries he has suffered because Defendant is vicariously liable for the crewmembers' failures and conduct, along with pre and post-judgment interests, costs, and any other relief the Court deems just and proper.

**Count V – Direct Liability for Failure to Safely Maintain the Premises**

83. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

84. Assaults and batteries, particularly by intoxicated passengers, are very prevalent on cruise ships, including those operated by Defendant.

85. Upon information and belief, statistics are maintained on such assaults and batteries and their prevalence; thus, Defendant had actual notice of the prevalence of assaults and batteries on their ships, particularly by intoxicated passengers.

86. Despite this actual knowledge/notice of assaults and batteries, Defendant failed to maintain the ship in a reasonably safe condition by, among other things, failing to employ security personnel capable of preventing attacks like that suffered by Plaintiff, and by overserving the attacker alcohol.

87. Defendant had a duty to maintain its ship in a reasonably safe condition in order to prevent entirely foreseeable attacks like that suffered by Plaintiff.

88. Defendant breached that duty by, among other things: failing to take steps to ensure that adequate security was present to prevent attacks such as the one in this case, failing to ensure that crewmembers were not overserving alcohol to intoxicated passengers; failing to control

passengers who were clearly and visibly intoxicated and out of control so as to be dangerous to others; failing to have adequate security personnel onboard.

89. But for these breaches, Plaintiff would not have been assaulted/battered and experienced severe physical and emotional injuries.

90. Plaintiff's injuries are a direct and proximate result of Defendant's failure to maintain its ship in a reasonably safe condition.

91. Wherefore, Plaintiff requests compensatory damages for the physical and emotional injuries he has suffered, along with pre and post-judgment interests, costs, and any other relief the Court deems just and proper.

### Count VI – Direct Liability for Negligent Training

92. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

93. Assaults and batteries, particularly those involving intoxicated passengers, are very prevalent on cruise ships, including those operated by Defendant.

94. Upon information and belief, statistics are maintained on such assaults and batteries and their prevalence; thus, Defendant had actual notice of the prevalence of assaults and batteries on its ships, particularly by intoxicated passengers.

95. Despite this actual knowledge/notice, Defendant failed to implement and/or operate sufficient training programs to educate crewmembers on how to prevent vicious attacks by passengers, as well as how to identify and stop serving alcohol to intoxicated passengers.

96. In fact, multiple crewmembers saw the attack but failed to prevent it, allowing the attacker to escape their grasps and attack Plaintiff multiple times.

97. Moreover, at the time of the attack, the attacker had been severely overserved alcohol and was extremely intoxicated.

98. Defendant had a duty to implement and operate training programs for its crewmembers in order to prevent entirely foreseeable attacks like that suffered by Plaintiff.

99. Defendant breached that duty by, among other things, failing to adequately implement and operate a training program designed to inform crewmembers of how to prevent attacks, including employing adequate security where the attack took place.

100. Defendant further breached that duty by failing to adequately implement and operate a training program designed to inform crewmembers of how to prevent overserving alcohol to intoxicated passengers.

101. But for these breaches, Plaintiff would not have been viciously attacked, causing him to experience severe physical and emotional injuries.

102. Plaintiff's injuries are a direct and proximate result of Defendant's failure to implement and operate a training program designed to prevent attacks and to prevent overserving alcohol to intoxicated passengers.

103. Wherefore, Plaintiff requests compensatory damages for the injuries he has suffered, along with pre and post-judgment interests, costs, and any other relief the Court deems just and proper.

## COUNT VII – Direct Liability Pursuant to 42 U.S.C. § 1981

104. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

105. There exists a contract between Defendant and all of its passengers, including Plaintiff, providing the rights and responsibilities of each party.

106. Plaintiff experienced disparate treatment with regard to that contract as an African American while on the vessel; i.e., he was treated differently than similarly situated white passengers for no other reason than his race.

107. Specifically, despite clearly being the victim of a vicious attack, Plaintiff was detained for hours rather than the white attacker, who was merely relegated to a "first class" portion of the vessel after only a brief detention due to not having a passport.

108. Additionally, despite being the victim, Plaintiff was consistently threatened with arrest and other negative treatment, even being referred to as "boy" despite being an adult, for "fighting" while other white passengers, including the attacker, were not.

109. Plaintiff was also not afforded the same medical treatment as other white passengers; i.e., he was forced to physically go to the medical office to get his x-rays as an act of intimidation when white passengers' medical information was sent to their rooms.

110. The systemic racism by Defendant continued when other African American and non-white passengers attempted to seek justice for Plaintiff by staging a peaceful protest.

111. They, along with Plaintiff, were met with hostility and continuously threatened by Defendant's employees, including being told not to record the situation as to hide the systemic racism occurring onboard.

112. In short, from the time Plaintiff was attacked until the time he disembarked the ship, he and other non-white passengers were treated negatively by Defendant's employees while the white attacker and other white passengers were not.

113. Such treatment was willful, wanton, and outrageous under the circumstances.

114. Defendant acted with malice or with reckless indifference to the Plaintiff's federally protected rights.

115. Plaintiff is required to pay his attorney a reasonable fee in connection with this action.

116. Attorney's fees are recoverable pursuant to 42 U.S.C. § 1988(b) as this action seeks to vindicate a right pursuant to 42 U.S.C. § 1981.

117. Wherefore, Plaintiff requests compensatory damages for the physical and emotional injuries he has suffered, punitive damages, along with pre and post-judgment interests, attorney's fees and costs, and any other relief the Court deems just and proper.

### Count VIII - Direct Liability Pursuant to 42 U.S.C. § 2000a(a)

118. Plaintiff hereby incorporates paragraphs 1-40 as if fully set forth herein.

119. Defendant is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b).

120. Specifically, Defendant provides lodging, food, and entertainment onboard the vessel, which is open to the public.

121. Plaintiff experienced disparate treatment with regard to the subject accommodations as an African American while on the vessel; i.e., he was treated differently than similarly situated white passengers for no other reason than his race.

122. Specifically, despite clearly being the victim of a vicious attack, Plaintiff was detained for four hours rather than the white attacker, who was merely relegated to a "first class" portion of the vessel after only a brief detention due to not having a passport.

123. Additionally, despite being the victim, Plaintiff was consistently threatened with arrest and other negative treatment, even being referred to as "boy" despite being an adult, for "fighting" while other white passengers, including the attacker, were not.

124. Plaintiff was also not afforded the same medical treatment as other white passengers; i.e., he was forced to physically go to the medical office to get his x-rays as an act of intimidation when white passengers' medical information was sent to their rooms.

125. The systemic racism by Defendant continued when other African American and non-white passengers attempted to seek justice for Plaintiff by staging a peaceful protest.

126. They, along with Plaintiff, were met with hostility and continuously threatened by Defendant's employees, including being told not to record the situation as to hide the systemic racism occurring onboard.

127. In short, from the time Plaintiff was attacked until the time he disembarked the ship, he and other non-white passengers were treated negatively by Defendant's employees while the white attacker and other white passengers were not.

128. Such treatment was willful, wanton, and outrageous under the circumstances.

129. Defendant acted with malice or with reckless indifference to the Plaintiff's federally protected rights.

130. Wherefore, Plaintiff requests compensatory damages for the physical and emotional injuries he has suffered, punitive damages, along with pre- and post-judgment interests, costs, and any other relief the Court deems just and proper.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law against Defendant, along with pre- and post-judgment interests, attorney's fees and costs, and any other relief the Court deems just and proper, as well as a trial by jury.

Respectfully submitted,

**Thomas Graham, Esq.**
*Counsel for Plaintiffs*
**MAUSNER GRAHAM INJURY LAW PLLC**
25 SE 2nd Avenue, Suite 808
Miami, Florida 33131
P: (305) 344-4878
F: (305) 800-8677
E: tom@mginjuryfirm.com

E: eservice@mginjuryfirm.com

By:   */s/ Thomas Graham*
**Thomas Graham, Esq.**
**FBN: 89043**

- 17 -